# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO.: 5:04CV173

| | |
|---|---|
| GREGORY LYNN FULBRIGHT and KAREN FULBRIGHT, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>) **ORDER**<br>THE LANE FURNITURE )<br>INDUSTRIES, INC. HEALTH CARE )<br>PLAN, and ROGER A. BLAND, )<br>ADMINISTRATOR, )<br>)<br>Defendants. )<br>_____ ) | |

**THIS MATTER** is before the Court on the following motions and memoranda: (1) Plaintiffs Gregory Lynn Fulbright and Karen Fulbright's ("Plaintiffs") Motion for Summary Judgment and Plaintiffs' Memorandum Supporting their Motion for Summary Judgment, (file docs. 17, 18), both filed on May 31, 2005; and (2) the Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment of Defendants The Lane Furniture Industries, Inc. Health Care Plan, and Roger A. Bland, Plan Administrator ("Defendants"), and Defendants' Memorandum in Support of Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, (file docs. 27, 28), both filed on September 12, 2005. These Motions are now ripe for disposition by the Court.

Having carefully considered the arguments, the record, and the applicable authority, for the below-stated reasons the Court will *deny* Plaintiffs' Motion for Summary Judgment, and *grant* Defendants' Motion for Summary Judgment .

# I. FACTUAL AND PROCEDURAL HISTORY

For purposes of the Motions for Summary Judgment, the Court accepts the following facts taken in the light most favorable to Plaintiff as true. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## A.     Plaintiff Gregory Lynn Fulbright's Injury

Plaintiff Gregory Lynn Fulbright ("Mr. Fulbright") was a self-employed beef cattle rancher. (Pls.' Mem. at 2.) Mr. Fulbright had no employees and did not carry workers' compensation insurance because he was not required to under North Carolina law. (*Id.*) He operated his business on the acreage surrounding his home property. (*Id.*) On the morning of May 6, 2003, Mr. Fulbright was feeding the horses, which his family kept for their personal use – unrelated to his cattle business. (*Id.*) While feeding the horses, Mr. Fulbright was about to get some hay when he noticed one of his business cattle loose in the hay area. (*Id.*)

This particular cow had been placed in a small holding area in the horse barn the night before, a place where Mr. Fulbright routinely held business cattle which were intended for sale the next day. (*Id.*) This barn was used primarily for personal use with the horses, but the small holding area was for business purposes. (*Id.*) And, in fact, the cow which was loose in the hay area while Mr. Fulbright was feeding the horses was in the holding area for business purposes when it escaped. (*Id.*) When Mr. Fulbright noticed the escaped cow, he "hollered at the cow to get it away from the hay so he could feed the horses." (*Id.*) Because Mr. Fulbright was engaged in the personal activity of feeding his horses, he states that he intended to finish feeding the horses before he began the business activity of returning the cow to the holding area. (*Id.*)

However, the cow was not agreeable to waiting until Mr. Fulbright finished his personal

activities. When Mr. Fulbright yelled at the cow, "she charged him and butted him with her head several times until he was able to escape." (*Id.*) Mr. Fulbright's leg was shattered, requiring medical attention which totaled $63,790.66. (*Id.*)

**B.      Plaintiffs' Insurance Coverage**

At the time of the accident, Mr. Fulbright was covered by the health insurance plan of his wife's employer, The Lane Industries, Inc. Health Care Plan (the "Plan").[1] (Pls.' Mem. at 1.) There is no dispute that Mr. Fulbright was covered by the Plan on the day of his injury. (Pls.' Mem. at 1; Defs.' Mem. at 2.) Although there was apparently some initial confusion because the Plan and/or United Benefits, Inc, the Plan's administrative agent, first agreed to pay for the injuries, then reversed itself, then agreed to pay, the ultimate decision was to deny benefits. (Pls.' Mem. at 3.) This ultimate decision, made after the Plan had reviewed the denial several times due to appeals by Plaintiffs' attorney, came in a letter dated December 2, 2003. (Pls.' Mem. at 3; Defs.' Mem. at 4.) The decision took into consideration, among other documents in the administrative record, an affidavit submitted to the Plan on November 13, 2003, in which Mr. Fulbright provided the details of the accident. (Admin. R. 45.) [2]

As the December denial letter states, Mr. Fulbright's claim for benefits was denied because of a self-employment exclusion in the Plan. (*Id.* at 46.) The self-employment exclusion reads as follows:

---

[1] Although Plaintiffs have named Roger A. Bland as the Plan Administrator, it is actually the Health Care Plan Committee which administers the Plan. (Defs.' Mem. at 1.) Roger A. Bland is simply the Chairman of the Health Care Plan Committee. (*Id.*) However, for purposes of this Order, this fact is insignificant.

[2] Citations to the Administrative Record refer to the record before the Plan when it made its decision to deny the claim for benefits. This Administrative Record was filed as an attachment to Defendants' Memorandum in Support of Motion for Summary Judgment. Plaintiffs and Defendants both cite to this Record in their Memoranda.

> No benefits are payable for: . . . (5) any Injury or Sickness arising out of, or in the course of, any occupation or employment for remuneration or profit or that is covered under any Worker's Compensation or similar laws, whether arising out of employment or self-employment or arising out of employment for a public employer, government, or governmental entity;

(*Id.* at 29.) The Health Care Plan Committee ("Committee") applied the self-employment exclusion to the facts of Mr. Fulbright's injury and determined that he was not eligible for benefits. (*Id.* at 46-48.) Specifically, the Committee used North Carolina workers' compensation law to determine whether Mr. Fulbright's injury arose out of or was in the course of his employment. (*Id.*)

Citing *Watkins v. City of Wilmington*, 290 N.C. 276, 281, 225 S.E.2d 577, 580 (1976), the Committee determined that Mr. Fulbright's employment as a self-employed cattle rancher who lived on the same premises as his business qualified him as always "on-call" for his business and "the entire period of his presence on the premises is deemed to be 'in the course of his' employment." (Admin. R. 47.) Further, again citing *Watkins*, Mr. Fulbright's injury was found to have arisen out of his employment because, as a business asset, an injury by a cow "is a natural consequence or incident of the employment and a natural result of one of its risks." (*Id.*) It is from this decision that Plaintiffs appeal to this Court.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v.*

*Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249-50. Moreover, when the movant supports its motion for summary judgment by affidavits, the adverse party may not rest upon the mere allegations or denials of their pleading, but the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980). Summary judgment is thus proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

### III. DISCUSSION

**A.    Scope of Judicial Review**

"A federal court's ability to review a discretionary decision of the administrator of an employee benefits plan is significantly limited." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999). If the benefit plan grants the fiduciary discretionary authority to determine a claimant's eligibility for benefits or to construe the terms of the plan, a reviewing court may only disturb the challenged denial of benefits upon a showing that the fiduciary abused its discretion.

5

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Elliott*, 190 F.3d at 605; *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997); *Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 123-24 (4th Cir. 1994). "'[W]hat follows from the applicability of the abuse of discretion standard is that the trustee's interpretation of relevant provisions of the plan documents – hence the challenged denial of benefits – will not be disturbed if *reasonable*.'" *Sheppard*, 32 F.3d at 124 (quoting *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir. 1989)). Thus, if the fiduciary's interpretation is reasonable, a court must affirm the denial even if the court would have come to a different conclusion independently. *Ellis*, 126 F.3d at 232 (citations omitted). A "reasonable" interpretation is one that is "'the result of a deliberate, principled reasoning process and . . . is supported by substantial evidence.'" *Elliott*, 190 F.3d at 605 (quoting *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997)). Substantial evidence is "'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

However, the deference owed to a plan fiduciary's decision is tempered when the decision to deny benefits impacts the fiduciary's financial interests, which results in the fiduciary operating under a conflict of interest. *Bernstein v. Capitalcare, Inc.*, 70 F.3d 783, 787 (4th Cir. 1995). In sum, if a plan administrator acts as both the fiduciary making claim decisions and the insurer paying claims, an inherent conflict of interest exists. *Id.* Accordingly, deference to the plan administrator is lessened, but only "to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80,

87 (4th Cir. 1993) (citations omitted). Therefore, where the plan fiduciary is operating under such a conflict of interest, such conflict is to be weighed as a fact in determining whether there is an abuse of discretion. *Ellis*, 126 F.3d at 233 (citing *Firestone Tire*, 489 U.S. at 115). Under no circumstance may a court deviate entirely from the abuse of discretion standard. *Id.* Rather, "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Id.*

The conflict of interest, however, is just one factor to be considered in determining whether a fiduciary abused its discretion. *Id.* A court should also consider, to the extent relevant: (1) the scope of the discretion conferred; (2) the purpose of the plan provision in which the discretion is granted; (3) any external standard that is relevant to the fiduciary's exercise of that discretion; (4) the fiduciary's motives; and (5) any conflict of interest under which the fiduciary operates in making its decision. *Id.* (quoting *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir. 1996)).

In the present case, the Plan contains the following pertinent language:

> The Plan is administered by a Committee which is composed of three to five persons appointed by the Board of Directors of the Plan Sponsor. The Committee has the discretionary authority to interpret and construe the Plan, to determine all questions of eligibility for benefits under or participation in the Plan, and to decide any and all other matters arising in the administration of the Plan.

(Admin. R. 41.) Accordingly, this Court concludes that the Plan here provides Defendants with discretion to interpret the language of the Plan and to grant or deny benefits in accordance with such interpretation.

With regard to a conflict of interest, the plan is self-funded. (Admin. R. 41.) Consequently, taken in the light most favorable to Plaintiffs, since Defendants acted both as the fiduciary making claim decisions and the insurer paying claims, an inherent conflict of interest exists. Therefore, the Court will apply a modified abuse of discretion standard to this case and will weigh Defendants' conflict of interest in determining whether Defendants abused their discretion in denying Plaintiffs' claim.

**B.      Evidence to be Considered by the Court**

The Fourth Circuit has made clear that an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time it made its benefits determination. *Sheppard*, 32 F.3d at 125. Although it may be appropriate for a court conducting a *de novo* review of an administrator's decision to consider evidence that was not taken into account by the administrator, under the abuse of discretion standard, a court must assess the reasonableness of the plan's administrator's decision according to the evidence available when the decision was made. *Webster v. Black & Decker (U.S.), Inc.*, 33 Fed. Appx. 69, 74 (4th Cir. 2002) (citing *Sheppard*, 32 F.3d at 125); *see also Abromitis v. Continental Casualty Co./CNA Ins. Cos.*, 261 F. Supp. 2d 388, 390 (4th Cir. 2003) (noting that when a court applies an abuse of discretion standard to an administrator's decision, the court may only consider those documents before the administrator at the time it made its decision) (citing *Sheppard*, 32 F.3d at 125, *Quesinberry v. Life Ins. Co. of North Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)). A court may not consider evidence that was unavailable to the plan administrator at the time it made its decision. *Sheppard*, 32 F.3d at 125. Consequently, this Court may only consider those documents that were considered by Defendants in making their decision regarding Plaintiffs'

claim, and neither party has attempted to submit additional evidence.

## C. Employment-Related Exclusion to Benefit Recovery

The Committee denied Mr. Fulbright's claim pursuant to the self-employment exclusion quoted above. In making this decision, the Committee looked to North Carolina workers' compensation law to determine whether Mr. Fulbright's injury arose out of or in the course of his self-employment, as provided by the self-employment exclusion. (Admin. R. at 29, 45-48.) Although Plaintiffs take issue with Defendants' interpretation of North Carolina law, they explicitly state that "[b]ecause of the similarity or the terminology of the Plan language and the terms 'arising out of and in the course of employment' in N.C. Workers Compensation case law, it is not error to use these cases for guidance." (Pls.' Mem. at 6-8, 9.) The similarities between the two are significant, as the North Carolina Workers' Compensation Act defines the term "injury" as an "injury by accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6).

Accordingly, because this Court is bound by the abuse of discretion standard, taking into consideration the conflict of interest which exists because the plan is self-funded, this Court will review the case relied on by Defendants in their December 2, 2003 denial letter. (Admin. R. 45-48.) In *Watkins*, a fireman who was on duty for 24 hours, and who was required to stay on the premises, was injured while helping a co-worker with personal car repairs, an activity allowed by supervisors. *See Watkins*, 290 N.C. at 277-80, 225 S.E.2d at 579-80. Of primary importance in *Watkins* was the fact that the fireman was continuously on-call during his shift. *Id.* at 281, 225 S.E.2d at 580. Specifically, the North Carolina Supreme Court stated:

> when an employee is required to live on the premises, either by his

9

> contract of employment or by the nature of the employment, and is
> continuously on call (whether or not actually on duty), the entire
> period of his presence on the premises pursuant to this requirement
> is deemed included in the course of employment.

*Id.* (citations omitted). Thus, even when the fireman in *Watkins* was performing a personal activity, he was still considered to be within the course of his employment. *Id.*

This is relevant to the case at hand because Mr. Fulbright owned his own business, and he happened to live on the same premises as his business. Thus, it was inevitable that Mr. Fulbright would have to take care of personal issues while also at his business location. Obviously there must be limits to what is a business activity and what is a personal activity for a cattle rancher who works and lives on the same property. However, this Court need not decide those limits, it must only decide whether the Plan was objectively reasonable in determining that the cow's attack was within the scope of Mr. Fulbright's employment.

Unlike the fireman in *Watkins*, Mr. Fulbright was not required to remain on the premises of his cattle ranch and was free to leave at any time. Like any business owner, when he left he took the risk that something would happen at his ranch and he would not be there to fix it. Thus, it can be assumed that when Mr. Fulbright was at his ranch and something went wrong, he would make it his responsibility to fix the problem. Because he was the only employee, there would have been nobody else to fix the problem. Thus, it follows that no matter what time of day, if something went wrong on his ranch, Mr. Fulbright handled the problem–making it a part of his job to remain "on-call."

Along this line of thinking, as the *Watkins* court stated, "an injury arises out of the employment when it is a natural and probable consequence or incident of the employment and a

natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment." *Id.* at 281, 225 S.E.2d at 581 (citations omitted). It does not require much imagination or cattle ranch experience to realize that a potential problem at a cattle ranch would be injury from working with these large animals. Further, common sense dictates that these large animals would occasionally escape from their fields or pens. Thus, injury from an escaped cow is a natural and probable consequence of being a cattle rancher.

However, Mr. Fulbright makes much of the fact that he was in the process of feeding his personal horses when he noticed the cow. He yelled at the cow, not intending to return it to the pen from which it had escaped at that moment, but intending to finish feeding the horses and then tend to the cow. Unfortunately, the cow did not wait for Mr. Fulbright to finish his personal business and charged him before he could finish feeding the horses. Thus, the very narrow question in this case is whether the Plan was objectively reasonable in determining that when a cattle rancher is charged by one of his escaped cows while engaged in a personal activity, his injury arises out of and in the course of his employment. The Court is constrained to agree with this determination. A cattle rancher who chooses to live where he works is exposing himself to the constant risk that his employment will interfere with his personal life when a cow wanders out of its pen, and unfortunately, as here, is hostile upon discovery. There was no error in the Plan's reliance on *Watkins* to interpret the scope of employment for Mr. Fulbright, and this Court finds its interpretation of *Watkins* to be objectively reasonable.

Therefore, the Plan did not abuse its discretion in denying coverage of Mr. Fulbright's May 6, 2003 injury pursuant to the self-employment exclusion provision of the Plan.

Consequently, Defendants are entitled to summary judgment, and Plaintiffs' Motion for Summary Judgment will be denied.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiffs Gregory Lynn Fulbright and Karen Fulbright's Motion for Summary Judgment, (file doc. 17), is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Defendants The Lane Furniture Industries, Inc. Health Care Plan, and Roger A. Bland, Plan Administrator, (file doc. 27), is hereby **GRANTED**.

The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

Signed: July 20, 2006

Richard L. Voorhees
United States District Judge